## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| UNION INSURANCE COMPANY | : | Case No. |
| OF PROVIDENCE a/s/o CAROL AND | : | |
| HOWARD SANBORN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | JURY TRIAL REQUESTED |
| v. | : | |
| | : | |
| GENERAL ELECTRIC  COMPANY, | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT**

1.      At all times relevant hereto, the plaintiff, Union Insurance Company of

Providence, was an insurance company licensed and authorized to do business in the State of

Rhode Island, and was and is in the business of providing insurance to consumers.  At all times

relevant hereto, the plaintiff was authorized to issue polces of insurance in the State of New

Hampshire.

2.      At all times relevant hereto, the defendant, the General Electric Company,

("GE"), was and is a corporation having a principal place of business at 3135 Easton Turnpike,

Fairfield, Connecticut, and was and is in the business of designing, manufacturing, and

distributing electric clothes dryers.

3.      At all times relevant hereto, the defendant was authorized to do business in the

State of New Hampshire, transacted business in this State, and otherwise did or performed acts

within this State which subjected it to the jurisdiction of this Court.

4.      The matter in controversy exceeds, exclusive of interest and costs, the sum of

Seventy-five Thousand Dollars ($75,000.00), and this court has jurisdiction over this matter

1

pursuant to 28 U.S.C. § 1332, *et seq.*

 5. Prior to May 6, 2003, the defendant designed, manufactured, assembled, inspected, tested, distributed, and placed into the stream of commerce clothes dryers with accompanying component parts, said product being intended for use by consumers for the ordinary purposes associated with clothes dryers.

 6. At all times relevant hereto, the defendant knew and intended that its clothes dryers would be used by members of the general public, and knew of the specific uses, purposes, and requirements for which said dryers would be utilized.  Further, by placing said dryers on the market for sale, the defendant represented that the dryers would safely operate and perform the uses for which they were intended and that, in all respects, the dryers were of merchantable quality.

## Count One:  Strict Liability

 7. The plaintiff hereby incorporates Paragraphs 1 through 6 as Paragraphs 1 through 6 of Count One as if fully set forth herein.

 8. Prior to May 6, 2003, a clothes dryer ("the dryer") designed, manufactured, assembled, inspected, tested, distributed and placed into the stream of commerce by the defendant was located and installed at premises owned by the plaintiff's insureds, Howard and Carol Sanborn ("Sanborns"), said premises being located at Barnes Avenue, Alton, New Hampshire (the "premises"), where it remained in place and in use until May 6, 2003.

 9. Said dryer reached the plaintiff's insureds without substantial change in its condition, and was not altered or modified prior to or during its use.

 10. On or about May 6, 2003, a date within the useful safe life of the subject product, a fire originated at the dryer located at the premises, said dryer bearing model number

DDE5100MBL and serial number MG2144926G.  The subject fire, and/or heat, smoke, and soot

therefrom, spread throughout the premises, thereby causing substantial damage to the interior

and exterior of the premises.

11.    The aforementioned fire originated as a result of a defect in the GE dryer located

on the premises, with said defect causing the ignition of nearby combustibles.

12.    Specifically, at all times relevant hereto, the subject dryer was in a defective

condition unreasonably dangerous to the consumer or user in that:

    a.    the dryer was defectively designed and/or manufactured in such a fashion that it had to propensity to malfunction, overheat and/or reach a temperature sufficient to cause ignition of combustibles;

    b.    the dryer was defectively designed and/or manufactured in such a fashion that it had the propensity to accumulate lint and other particulates, that were not reasonably apparent or visible to the consumer upon reasonable inspection, which could be ignited by the heat of the dryer and/or cause the dryer to malfunction, overheat and/or reach a temperature sufficient to cause ignition of said combustibles;

    c.    the dryer was designed, manufactured and/or assembled in a defective manner and the defendant knew or should have known of the dangerous characteristics of said product, but continued manufacturing and distributing the same;

    d.    the dryer was manufactured, designed and/or assembled with unsuitable or improper materials and parts making it susceptible to overheating and allowing its component parts to reach excessive temperatures;

    e.    the dryer was designed, manufactured and/or assembled with unsuitable or improper materials and that the defendant knew or should have known of the defective characteristic of said product, but continued manufacturing, designing and/or assembling the same;

    f.    the defendant took no measures to correct said defective design or to remedy the product's defects in order to avoid exposing potential users to an unreasonable risk of injury or damage with the use of said product;

    g.    the defendant failed to exercise reasonable care in the inspection, assembling, testing, packaging, shipping, and/or installation of the

product;

h.     the dryer was manufactured and distributed with inadequate warnings regarding its use, its useful safe life and/or its propensity to start a fire;

i.     the dryer was manufactured and distributed with inadequate warnings to inform consumers of the defendant's knowledge, express or implied, of the propensity of the dryer to cause a fire when put to its intended use, and of the fact that the dryer lacked adequate warnings and instructions to reduce or eliminate the risk of fire; and

j.     the dryer was designed and/or manufactured in such a way as to be unreasonably dangerous to the user in that it created a danger to an extent that which would be contemplated by the ordinary consumer.

13.     The aforementioned defective design and/or manufacture of the dryer existed at the time the dryer was sold by a seller in the business of selling such products; and/or the subject dryer reached the Sanborns without substantial change in the condition in which it was sold.

14.     As a direct and proximate result of the unreasonably dangerous and defective product as described above, and of the fire resulting from said product, the Sanborns' home and personal property were substantially damaged.

15.     At all times relevant hereto, a contract of insurance for loss and/or property damage was in effect between the Sanborns and the plaintiff which provided coverage for, among other things, the loss of or damage to the land and buildings at the subject property, as well as the loss of or damage to personal property within the Sanborn residence, and additional living expenses.

16.     Pursuant to the aforementioned contract of insurance between the plaintiff and the Sanborns, the plaintiff was forced to expend money for the damage to the Sanborn home and personal property, as well as for costs incurred by the Sanborns during the time that the home was uninhabitable and, therefore, the plaintiff is subrogated to the rights of its insureds

with respect to any and all claims for damages against the defendant GE.

17.    Pursuant to the aforementioned contract of insurance between the plaintiff and the Sanborns, monies have been and will be expended on behalf of the plaintiff to the detriment of the plaintiff for the damage to the subject premises and personal property.  As the plaintiff has sustained damages as a result of said expenditures, expenditures rightly the responsibility of the defendant, the plaintiff has an equitable and contractual right of subrogation and is subrogated to the rights of its insureds with respect to any and all claims for damages of against the defendant.

## Count Two:  Negligence

18.    The plaintiff hereby realleges by reference Paragraphs 1 through 17 as if fully set forth herein.

19.    At all times relevant, the defendant had a duty to design and/or manufacture the subject electric dryer so that it would be reasonably safe for the use which the defendant could foresee in light of its intended purpose and otherwise to ensure that it did not pose an unreasonable risk.

20.    Due to its design, manufacture, and distribution of the unreasonably dangerous product as aforesaid, the defendant was similarly negligent in that:

a.    the dryer was defectively designed and/or manufactured in such a fashion that it had to propensity to malfunction, overheat and/or reach a temperature sufficient to cause ignition of combustibles;

b.    the dryer was defectively designed and/or manufactured in such a fashion that it had the propensity to accumulate lint and other particulates, that were not reasonably apparent or visible to the consumer upon reasonable inspection, which could be ignited by the heat of the dryer and/or cause the dryer to malfunction, overheat and/or reach a temperature sufficient to cause ignition of said combustibles;

c.    the dryer was designed, manufactured and/or assembled in a defective manner and the defendant knew or should have known of the dangerous

5

characteristics of said product, but continued manufacturing and distributing the same;

d.      the dryer was manufactured, designed and/or assembled with unsuitable or improper materials and parts making it susceptible to overheating and allowing its component parts to reach excessive temperatures;

e.      the dryer was designed, manufactured and/or assembled with unsuitable or improper materials and that the defendant knew or should have known of the defective characteristic of said product, but continued manufacturing, designing and/or assembling the same;

f.      the defendant took no measures to correct said defective design or to remedy the product's defects in order to avoid exposing potential users to an unreasonable risk of injury or damage with the use of said product;

g.      the defendant failed to exercise reasonable care in the inspection, assembling, testing, packaging, shipping, and/or installation of the product;

h.      the dryer was manufactured and distributed with inadequate warnings regarding its use, its useful safe life and/or its propensity to start a fire;

i.      the dryer was manufactured and distributed with inadequate warnings to inform consumers of the defendant's knowledge, express or implied, of the propensity of the dryer to cause a fire when put to its intended use, and of the fact that the dryer lacked adequate warnings and instructions to reduce or eliminate the risk of fire; and

j.      the dryer was designed and/or manufactured in such a way as to be unreasonably dangerous to the user in that it created a danger to an extent that which would be contemplated by the ordinary consumer.

21.    As a direct and proximate result of the foregoing negligence of the defendant and of the fire resulting therefrom, the Sanborns' home and personal property were substantially damaged.

22.    At all times relevant hereto, a contract of insurance for loss and/or property damage was in effect between the Sanborns and the plaintiff which provided coverage for, among other things, the loss of or damage to the land and buildings at the subject property,

6

as well as the loss of or damage to personal property within the Sanborn residence, and additional living expenses.

23.     Pursuant to the aforementioned contract of insurance between the plaintiff and the Sanborns, the plaintiff was forced to expend money for the damage to the Sanborn home and personal property, as well as for costs incurred by the Sanborns during the time that the home was uninhabitable and, therefore, the plaintiff is subrogated to the rights of its insureds with respect to any and all claims for damages against the defendant GE.

24.     Pursuant to the aforementioned contract of insurance between the plaintiff and the Sanborns, monies have been and will be expended on behalf of the plaintiff to the detriment of the plaintiff for the damage to the subject premises and personal property.  As the plaintiff has sustained damages as a result of said expenditures, expenditures rightly the responsibility of the defendant, the plaintiff has an equitable right of subrogation and is subrogated to the rights of its insureds with respect to any and all claims for damages of against the defendant.

WHEREFORE, the plaintiff claims the following;

1.     Fair, just, and reasonably compensatory damages from the defendant;

2.     Attorneys' fees and costs associated with this action; and

3.     Equitable relief that the Court deems appropriate.

Dated: May 2, 2006                              Respectfully submitted,

___/s/ Nicholas D. Wright, Bar # 14269___
Nicholas D. Wright, Esq.
BOUCHARD, KLEINMAN & WRIGHT, P.A.
45 Bay Street
Manchester, NH  03104
Phone:  (603) 623-7222
Fax:      (603) 623-8953
Email:  nwright@bestnhlaw.com
Attorneys for the Plaintiff

7